IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| SHEILA MITCHELL<br>3406 Bruton Parish Way<br>Silver Spring, Maryland 20904<br><br>and<br><br>TARSHA WILSON<br>2704 Upshur Street, Apartment 3<br>Mt. Rainier, Maryland 20712<br><br>Plaintiffs,<br><br>v.<br><br>ALPHA KAPPA ALPHA<br>SORORITY, INC.<br>5656 South Stony Island Avenue<br>Chicago, Illinois 60637<br><br>Defendant | JURY DEMAND |

## COMPLAINT

COME NOW the Plaintiffs, Sheila Mitchell and Tarsha Wilson, by and through counsel, Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully present this Complaint against the Defendant, Alpha Kappa Alpha Sorority, Inc. ("AKA"), to enforce their rights for acts of negligence, defamation, breach of contract, and violation of the District of Columbia Human Rights Act.

### JURISDICTION

1. This action is invoked pursuant to 28 U.S.C. § 1332. Jurisdiction is proper as Plaintiffs Mitchell and Wilson are residents of the State of Maryland and; Defendant, Alpha Kappa Alpha Sorority, Inc., is an out-of state corporation

whose principal place of business (i.e., international headquarters) is in the State of Illinois; and the matter in controversy exceeds the sum or value of $75,000.00.

## VENUE

2. Venue is properly laid in the District of Columbia pursuant to 28 U.S.C. § 1391, as the Defendant operates a licensed business in the District of Columbia and the acts herein complained of occurred within the said jurisdiction.

## STATEMENT OF FACTS

3. In 2000, Plaintiffs were initiated into the Xi Zeta Omega Chapter (the "XZO Chapter") of AKA, Washington, DC.

4. From 2000-2004, Plaintiffs have collectively held numerous leadership positions and attended several leadership conferences.

5. From August 1993-May 1998. Plaintiff Wilson attended Bowie State University ("BSU").

6. During her freshman year at BSU, Plaintiff Wilson met Ms. Ruby Crenshaw-Lawrence ("Ruby") who transferred from St. Augustine College in North Carolina.

7. Ruby transferred to Howard University as an undergraduate in or before to September 1999.

8. At all times relevant to this memorandum, Alpha Chapter was the only AKA chapter at Howard University that accepted undergraduates as new AKA members.

9. In or about October 1999, Ruby became acquainted with Soror Evelyn Lucas ("Lucas"), a XZO Chapter member, and informed Lucas that Plaintiff Wilson was interested in joining AKA.

10. In or about October 1999, Lucas agreed to sponsor Plaintiff Wilson for the AKA membership intake process.

11. From 1999-2001, Ruby continued to pursue membership into AKA at Alpha Chapter, Howard University, but was not accepted on at least two occasions.

12. During her pursuit for membership to AKA, Ruby submitted legacy paperwork to AKA.

13. During Ruby's pursuit for membership to AKA, Lucas assisted in Ruby's submission of legacy paperwork to AKA.

14. Upon information and belief, Ruby is not an AKA legacy.

15. In or about 1999-2000, Ruby was not accepted to the AKA membership intake process.

16. In February 2000, Lucas forwarded Ms. Wilson correspondence to the former Supreme Basileus, Norma Solomon White ("White") to appeal a decision of the former North Atlantic Regional Director, Edith Booker ("Booker"), to not let Ruby make line at Howard University although legacy papers were submitted.

17. Upon information and belief, in the letter described in paragraph 16, Lucas stated that Ruby was her daughter.

18. Upon information and belief, Ruby is not Lucas's daughter.

19. Notwithstanding the letter described in paragraph 16, White did not overturn the decision and Ruby was not accepted into Alpha Kappa Alpha.

3

20. During the application process described in paragraphs 12-19, Ruby signed the "Candidate Commitment Statement" (a copy of which is annexed hereto as Exhibit A).

21. In April 2000, Plaintiff Wilson was initiated in XZO Chapter.

22. In 2000, Plaintiff Mitchell was initiated in XZO Chapter.

23. In or about April 2000, Ruby inquired about the details of the initiation process, but Ms. Wilson did not share them with her.

24. Following April 2000, Ruby and Ms. Wilson remained friends.

25. In 2001, Plaintiff Wilson invited Ruby to have dinner with her on two (2) occasions; once at Kendra White's ("Kendra") house and once at Plaintiff Mitchell's house. These events were not AKA related events.

26. AKA members and non-members attended this event, including, but not limited to Dorothy Prior, Ruby, Lauren White, Irene, Kendra and Shannon Whiting.

27. The events described in paragraphs 25-26 were not AKA related events.

28. Upon information and belief, some of the guests and/or hosts at the events described in paragraphs 25-26 have never expressed any interest in joining AKA.

29. At no time were any guests or hosts at the events described in paragraphs 25-26 questioned about sorority history or were they locked in a bathroom.

30. At no time were pillows thrown at any guests or hosts at the events described in paragraphs 25-26.

31. At no time were any guests or hosts at the events described in paragraphs 25-26 forced and/or required to clean any kitchen.

32. In or about September 2002, Lucas and Plaintiff Wilson discussed co-sponsoring Ruby.

33. In or about February 2003, Lucas informed Plaintiff Wilson that she would be unable to attend the chapter meeting due to personal reasons.

34. During the events described in paragraph 33, Lucas provided Plaintiff Wilson with a copy of Ruby's application materials.

35. The materials described in paragraphs 34 were inaccurate because they included a "Legacy Application" and omitted her attendance at BSU.

36. During the application process described in paragraphs 32-35, Ruby signed the "Candidate Commitment Statement" (a copy of which is annexed hereto as Exhibit A).

37. In light of the information described in paragraph 35, Ms. Wilson informed Lucas that she was apprehensive about sponsoring Ruby.

38. From 2002-2003, Plaintiff Wilson maintained friendly relations with Ruby.

39. In or about 2003, Plaintiff Wilson found her relationship with Ruby became strained due to personal developments in Ruby's life.

40. In or about December through January 2005, Lucas asked Plaintiff Wilson to sponsor Ruby on numerous occasions.

41. In light of the facts and circumstances described in paragraphs 35-36 and 39, Plaintiff Wilson declined Lucas's invitation described in paragraph 40.

42. When Plaintiff Wilson declined to sponsor Ruby described in paragraph 41, Lucas reacted harshly and severely criticized the decision.

43. In 2005, Lucas falsely stated that Roselyn Aker agreed to sponsor Ruby in order to obtain a "membership packet."

44. Roselyn Aker and Kimberly Varner are familiar with the facts and circumstances described in paragraphs 1-44.

45. In part, as a result of Plaintiff Wilson's decision not to sponsor her, Ruby was not able to join AKA.

46. In or about 2005, Ruby filed a hazing complaint against Plaintiff Wilson.

47. In or about 2005, Ruby alleged that Plaintiffs had "hazed" her during the events described in paragraphs 25-26 in 2001.

47. Joy Elaine Daley ("Daley"), an employee, agent and/or representative of AKA, prepared a letter dated April 2, 2005 ("Recommendation Letter") placing Plaintiffs on inactive status, and a letter dated July 25, 2005 ("Suspension Letter") suspending Plaintiffs.

48. In the Recommendation Letter, Daley does not inform Plaintiffs of the specific allegations against them.

49. In or about April 2005, Daley attended an XZO Chapter meeting in her capacity as regional director for AKA.

50. During the meeting described in paragraph 49, Daley stated Plaintiffs were placed on "inactive" status.

51. During the meeting described in paragraph 49, Daley stated Plaintiffs out of the meeting in front of their peers and sorority sisters.

52. During the meeting described in paragraph 49, Daley did not inform Plaintiffs of the specific charges against them.

53. Plaintiffs have the right to be advised by the fact-finder of the specific allegations made against her during the fact-finding process. AKA Anti-Hazing Handbook, 13 (1st ed. 2001).

54. In the suspension letter, Daley states that a "fact finding" took place.

55. Upon information and belief, the "fact finding" described in paragraph 54 was fatally insufficient and erroneous to grievous procedural errors and negligent failure to properly investigate the facts and circumstances surrounding the allegations described in paragraph 47.

56. Upon information of belief, the "fact finding" did not include interviewing witnesses familiar with the allegations described in paragraph 47, including, but not limited to person specifically named in the allegations and in the suspension letter.

57. Upon information and belief, the witnesses described in paragraph 56 would have exonerated Plaintiffs with regards to the allegations described in paragraph 47.

58. Some of the witnesses described in paragraph 56 have submitted notarized affidavits in support of Plaintiffs and which explicitly refute the allegations described in paragraph 47.

59. AKA alleges that Plaintiffs participated in hazing activities in violation of AKA Const. Art. V.

60. Hazing is described as "an act or series of acts which includes, but is not limited to, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha." AKA Const. Art. V.

61. Plaintiffs never committed physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual.

62. Regardless, AKA suspended Plaintiffs without regard for its own policies, procedures, rules, regulations, and/or guidelines and in violation of Plaintiffs' rights afforded to her by the AKA Constitution and by State and Federal Law.

### Count I: Breach of Contract

63. Plaintiffs re-plead and re-allege paragraphs 1 through 63 as if set forth separately and at length herein.

64. AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, *Say "No" to Hazing*!

65. The AKA Constitution and AKA Anti-Hazing Handbook, *Say "No" to Hazing*!, are a contract or contracts between AKA and Plaintiffs that Plaintiffs were required to read and sign.

66. As such, AKA breached its contract or contracts with Plaintiffs by its failures to abide by the terms of such contract or contracts.

67. Plaintiffs suffered the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

### Count II: Defamation

68. Plaintiffs re-plead and re-allege paragraphs 1 through 67 as if set forth separately and at length herein.

69. AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, *Say "No" to Hazing*!

70. Upon information of belief, the "fact finding" did not include interviewing witnesses familiar with the allegations described in paragraph 47, including, but not limited to person specifically named in the allegations and in the suspension letter.

71. Upon information and belief, the witnesses described in paragraph 70 would have exonerated Plaintiffs with regards to the allegations described in paragraph 47.

72. Some of the witnesses described in paragraph 70 have submitted notarized affidavits in support of Plaintiffs and which explicitly refute the allegations described in paragraph 47.

73. To date, the witnesses described have not been interviewed.

74. AKA knowingly published false hazing against Plaintiffs in writing and on the internet and continue to publish these allegations to this day.

75. Plaintiffs had not properly been found to have hazed; AKA knew or should have known that these statements were untrue.

76. As such, AKA defamed Plaintiffs by knowingly spreading false and defamatory statements about Plaintiffs.

77. Plaintiffs suffered damage to their characters, repute and standing in their community, the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

### Count III: Negligence

78. Plaintiffs re-plead and re-allege paragraphs 1 through 77 as if set forth separately and at length herein.

79. AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, *Say "No" to Hazing!*

80. AKA had a duty to Plaintiffs to abide by its Constitution and Anti-Hazing Handbook, *Say "No" to Hazing!*, which duty AKA negligently breached, proximately causing Plaintiffs' injuries.

81. AKA had a duty to Plaintiffs to interview witnesses familiar with the allegations described in paragraph 47, including, but not limited to person specifically named in the allegations and in the suspension letter.

82. AKA did not interview the witnesses described in paragraph 81 during the "fact finding" described in paragraph 54 and have not done so to date.

83. As such, AKA was negligent with regard to Plaintiffs.

84. Plaintiffs suffered damage to her repute and standing in her community, the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

### RELIEF SOUGHT

85. Plaintiffs re-plead and re-allege paragraphs 1 through 84 with the same force and effect as if set forth separately and at length herein.

86. Plaintiffs seek compensatory and punitive damages for pain and suffering, humiliation and loss of standing in the community in the amount of $1,000,000.00.

87. Plaintiffs seek pre and post-judgment interest.

88. Plaintiffs seek the costs of litigation, including reasonable attorney's fees and expert witness fees.

89. Plaintiffs seek such other relief as may be just.

## JURY DEMAND

80. Plaintiffs demand a trial by jury.

Respectfully submitted,

_____
Jimmy A. Bell, Esquire
Bar #MD14639
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620 Office
(301) 599-7623 Fax
Counsel for Plaintiffs